IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

IRENE PRUITT,

    Plaintiff,

v.

ALAMOSA COUNTY SHERIFF'S OFFICE,
ROBERT JACKSON, Alamosa County Sheriff, in his individual capacity,
JOSHUA HILL, Alamosa County Deputy Sheriff, in his individual capacity,
JOSHUA BAIER, Alamosa County Deputy Sheriff, in his individual capacity,
MOSES HEREDIA, Alamosa County Deputy Sheriff, in his individual capacity,
KEITH STAMBAUGH, Alamosa County Deputy Sheriff, in his individual capacity,
MARTIN MAEZ, Alamosa County Deputy Sheriff, in his individual capacity,
NICK SMITH, Alamosa County Deputy Sheriff, in his individual capacity,
ANGELA LOBATO, Alamosa County Deputy Sheriff, in her individual capacity,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Irene Pruitt, through her attorneys Adam Frank and Faisal Salahuddin of FRANK & SALAHUDDIN LLC, respectfully alleges as follows:

**INTRODUCTION**

1. This is a civil rights action for monetary damages, declaratory relief, injunctive relief, and relief in the nature of mandamus, brought pursuant to 42 U.S.C. § 1983.

2. Between and including November 4, 2016 and November 6, 2016, Irene Pruitt was forced to go through labor and give birth on the floor of her jail cell at the Alamosa County Jail. This jail cell had no toilet or running water, just a hole in the floor the size of a half a piece of paper. For hours on end, Ms. Pruitt did everything in her power to let the jail employees who were present know that

1

she was in labor, in extreme pain, and needed to go to the hospital immediately. The Alamosa County Sheriff's Office employees ignored Ms. Pruitt's repeated and constant cries for help until it was too late. The Alamosa County Sheriff's Office forced Ms. Pruitt to go through labor and give birth cold and alone on the concrete floor of her cell.

3. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Plaintiff seeks declaratory relief, injunctive relief, relief in the nature of mandamus, and damages as set forth herein. 28 U.S.C. §§ 1361, 1343, 2201-02; Fed. R. Civ. P. 65. This Court possesses subject-matter jurisdiction these claims. 28 U.S.C. §§ 1331, 1343, 2201-02. This court has jurisdiction over Plaintiff's claim for attorneys' fees and costs. 42 U.S.C. § 1988.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391. All the events alleged herein occurred in the State of Colorado, and all the parties were residents of and/or domiciled in the State at the time of the events giving rise to this litigation.

## PARTIES

5. Plaintiff Irene Pruitt is a 31-year-old woman. She is a resident of Colorado and was a resident of Colorado at all times relevant to this complaint. See Exhibit 1.

6. Defendant Joshua Hill is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

7. Defendant Joshua Baier is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

8. Defendant Moses Heredia is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

9. Defendant Keith Stambaugh is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

10. Defendant Martin Maez is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

11. Defendant Nick Smith is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, he was acting under color of state law.

12. Defendant Angela Lobato is an Alamosa County Sheriff's Office employee. At all times relevant to this litigation, she was acting under color of state law.

13. Defendant Robert Jackson is the elected Sheriff of Alamosa County. At all times relevant to this litigation, he was acting under color of state law.

14. Defendant Alamosa County Sheriff's Office is the law enforcement agency that runs the Alamosa County Jail.

## FACTUAL ALLEGATIONS

15. On the early morning of November 4, 2016, Irene Pruitt was arrested in Alamosa County.

16. At the time of Ms. Pruitt's arrest, she was eight months pregnant.

17. Ms. Pruitt had also been using opiates.

18. Based on these two conditions, Ms. Pruitt was brought to the San Luis Valley Regional Medical Center for an evaluation prior to being booked into the Alamosa County Jail.

19. A doctor at the San Luis Valley Regional Medical Center cleared Ms. Pruitt to be taken to jail but gave both her and the ACSO officers with her clear written instructions: "Return here or go to the nearest Emergency Department right away if you have: Pain or cramping in the abdomen (belly) or pelvis, vaginal bleeding, nausea / vomiting, dizziness / lightheadedness or passing out."

20. When Ms. Pruitt arrived at the Alamosa County Jail, she had a medical screening with Defendant Lobato, not a person with medical training.

21. At approximately noon, Deputy Lobato called in an outside nurse K. Blearney, RN, to come to the Alamosa County Jail and evaluate Ms. Pruitt based on her being "very pregnant" and also going through withdrawal.

22. Nurse Blearney noted that Ms. Pruitt was not in labor but was beginning to have withdrawal symptoms.

23. Nurse Blearney explicitly noted that because of the impending withdrawal, Ms. Pruitt was a "risk for preterm labor."

24. Nurse Blearney made the Defendants aware that Ms. Pruitt was at risk for going into preterm labor. As Nurse Blearney wrote, "Jail Staff aware . . . of need for emergent care if I/M [inmate] goes into labor."

25. Nurse Blearney told Ms. Pruitt that "she needs to contact jail staff if she feels contractions, + fetal movement, water breaks or any other problems she has."

26. Nurse Blearney then left the Alamosa County Jail.

27. Defendants put Ms. Pruitt into cell 101 in the booking area of the Alamosa County Jail.

28. Cell 101 has no toilet and no sink. Instead of a toilet, cell 101 has a hole in the ground approximately 6" x 12", covered by a grate. An inmate in cell 101 has no access to water.

29. Shortly after being placed in cell 101, Ms. Pruitt's withdrawal symptoms began to worsen. Within a matter of hours, Ms. Pruitt's withdrawal symptoms were severe.

30. As a part of her severe withdrawal symptoms, Ms. Pruitt was throwing up, sweating profusely soaking her clothes, having diarrhea, and having extremely bad stomach cramps, among other symptoms.

31. Ms. Pruitt let the Defendants who were on duty at the time know that she was suffering from these extreme withdrawal symptoms. Defendants Baier, Stambaugh, Maes, Smith, and Lobato

each interacted and spoke with Ms. Pruitt while she was experiencing these extreme withdrawal symptoms. These defendants both witnessed and heard Ms. Pruitt describe her symptoms.

32. Defendants Baier, Stambaugh, Maes, Smith, and Lobato were each aware that Ms. Pruitt was eight months pregnant.

33. Defendants Baier, Stambaugh, Maes, Smith, and Lobato were each aware that Ms. Pruitt's withdrawal symptoms put her at risk for going into pre-term labor.

34. Defendants Baier, Stambaugh, Maes, Smith, and Lobato were each aware that, according to Ms. Pruitt's discharge instructions from the hospital (given to both her and ACSO deputies before she was brought to the jail), Ms. Pruitt needed to return to the hospital if she experienced "Pain or cramping in the abdomen (belly) or pelvis, vaginal bleeding, nausea / vomiting, dizziness / lightheadedness or passing out."

35. In spite of this knowledge, Defendants Baier, Stambaugh, Maes, Smith, and Lobato refused to provide Ms. Pruitt with any medical care or any access to medical care. They provided Ms. Pruitt with no medication and refused to have her transported to the hospital despite her repeated pleas.

36. Defendants Smith, Lobato, and Maes permitted Ms. Pruitt one two-minute shower to address the fact that she was covered in vomit, feces, and sweat. During the shower, Defendants threatened a pregnant Ms. Pruitt, "If you don't hurry up, I'm gonna come in and tase you."

37. Throughout the day of November 4, 2016, Ms. Pruitt pleaded with Defendants Baier, Stambaugh, Maes, Smith, and Lobato to be taken to the hospital, as directed by her hospital discharge instructions. Defendants Baier, Stambaugh, Maes, Smith, and Lobato denied Ms. Pruitt access to medical care despite their knowledge that Ms. Pruitt was experiencing severe withdrawal, that she was eight months pregnant, and that her withdrawal put her at risk for pre-term labor.

38. Denied medical care on November 4, on November 5 Ms. Pruitt went into pre-term labor.

39. On November 5, Ms. Pruitt principally interacted with Defendants Hill, Baier, and Heredia.

40. On November 5 and 6, Ms. Pruitt's withdrawal symptoms described above continued. Defendants Hill, Baier, and Heredia witnessed these symptoms.

41. On November 5, Ms. Pruitt also went into labor.

42. Defendants Hill and Baier regularly observed and heard Ms. Pruitt in person while Defendant Heredia worked in the control booth. From the control booth, Defendant Heredia could see the video feed from the camera in Ms. Pruitt's cell and could observe Ms. Pruitt all the time.

43. At some point on November 5, Ms. Pruitt was moved to cell 103.

44. Like cell 101, cell 103 had no sink and no toilet.

45. Additionally, the grate in the floor of cell 103 was clogged.

46. From cell 103, Ms. Pruitt tried everything she could think of to tell Defendants Hill, Baier, and Heredia that she was in extreme pain from being in labor.

47. Ms. Pruitt had previously in her life given birth, so she clearly understood that the pains she was feeling on November 5 were based on labor, not withdrawal.

48. Ms. Pruitt cried out to Defendants Hill, Baier, and Heredia that she was in labor and needed to go to the hospital. Defendants ignored her pleas for help and medical care.

49. Ms. Pruitt's pleas started out as shaky and nervous. They escalated to screaming and shouting. Nothing worked. Nothing Ms. Pruitt said persuaded Defendants Hill, Baier, and Heredia to call for an ambulance to get medical attention for Ms. Pruitt, despite the fact she was in labor.

50. On the early morning of November 6, Ms. Pruitt's labor pains got even worse.

51. Finally, Defendant Baier told Defendant Hill to call for an ambulance. Defendant Baier also told Ms. Pruitt that if she wasn't actually in labor, he would bring her back to the jail and file additional charges against her for false reporting.

52. Deputy Hill's call for the ambulance was too late. Before the ambulance arrived, Ms. Pruitt gave birth to a baby girl on the concrete floor of her jail cell.

53. The customs, policies, and practices of the Alamosa County Sheriff's Office and Defendant Jackson were a proximate cause of the horrific ordeal Ms. Pruitt suffered at the hands of Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia.

54. As Sheriff, Defendant Jackson is the policymaker for the Alamosa County Sheriff's Office.

55. Sheriff Jackson set the custom, policy, and practice that the Alamosa County Sheriff's Office does not employ any medical personnel at the Alamosa County Jail.

56. Sheriff Jackson set the custom, policy, and practice that the Alamosa County Sheriff's Office does not contract with any medical personnel to work regular shifts at the Alamosa County Jail.

57. As a result of Defendant Jackson's customs, policies, and practices for the Alamosa County Sheriff's Office, there was no medical personnel at the Alamosa County Jail at any time between and including November 4 and November 6, other than to provide Ms. Pruitt's initial screening around noon on November 4.

58. As a result of Defendant Jackson's customs, policies, and practices for the Alamosa County Sheriff's Office, for an inmate to receive medical care while housed at the Alamosa County Jail, a jail employee has to either call an ambulance or call an outside nurse or doctor to come to the jail.

59. Defendant Jackson has also created a custom, policy, and practice for the Alamosa County Sheriff's Office to prioritize minimizing inmate medical expenses over ensuring that inmates receive adequate medical care.

60. As an outgrowth of this custom, policy, and practice, Defendant Jackson failed to train the other defendants in this case how to properly respond to medical concerns raised by inmates.

61. Defendant Jackson failed to properly train the other Defendants regarding the proper handling of inmates needing medical treatment based on going through withdrawal from opiates.

62. Defendant Jackson's training of the other Defendants regarding the handling of inmates going through withdrawal from opiates consisted of a directive to provide no medical care.

63. Defendant Jackson failed to properly train the other Defendants regarding the proper handling of pregnant inmates close to their due dates.

64. Defendant Jackson's training of the other Defendants regarding the handling of inmates going through withdrawal from opiates consisted of a directive to provide no medical care unless the inmate is in active labor.

65. Defendant Jackson failed to properly train the other Defendants regarding the proper handling of pregnant inmates experiencing apparent medical distress.

66. Defendant Jackson provided the other Defendants with no training regarding the proper handling of pregnant inmates experiencing apparent medical distress.

67. Defendant Jackson failed to properly train the other Defendants regarding the proper handling of pregnant inmates experiencing withdrawals.

68. Defendant Jackson provided the other Defendants with no training regarding the proper handling of pregnant inmates experiencing withdrawals.

69. While the official policy of the Alamosa County Sheriff's Office is that medical care will be made available to pregnant inmates, the actual custom, policy, and practice of the Alamosa County Sheriff's Office is to deny such care.

70. While the official policy of the Alamosa County Sheriff's Office is that emergency medical care will be made available to all inmates, the actual custom, policy, and practice of the Alamosa County Sheriff's Office is to deny such care unless an inmate appears to be literally dying.

71. While the official policy of the Alamosa County Sheriff's Office is that inmates will not be permitted to go through withdrawal at the jail unless there is a qualified medical professional present to supervise the process, the actual custom, policy, and practice of the Alamosa County Sheriff's Office is to lock inmates in withdrawal in a cell without a toilet until the inmate's withdrawal symptoms cease.

72. Based on the actual customs, policies, and practices Defendant Jackson has set for the Alamosa County Sheriff's Office, as well as his concomitant failure to properly train his deputies on how to handle an inmate in withdrawal, an inmate who is very pregnant, a pregnant inmate in withdrawal, or an inmate having an acute medical problem, an incident such as what happened to Ms. Pruitt was inevitable.

## CLAIMS FOR RELIEF

### First Cause of Action: Deliberate Indifference
### (Withdrawals While Pregnant Leading to Pre-Term Labor and Early Delivery)
### Fourteenth Amendment; 42 U.S.C. § 1983
### Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia

73. Ms. Pruitt incorporates all other paragraphs as if fully detailed herein.

74. Between and including November 4 and November 6, 2016, Ms. Pruitt experienced extreme withdrawal symptoms while at the Alamosa County Jail. These symptoms were so serious that Ms. Pruitt required immediate medical attention.

75. At this time, Ms. Pruitt was eight months pregnant.

76. Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia knew Ms. Pruitt was pregnant and going through withdrawal.

77. Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia knew that this represented a serious medical condition that required immediate medical attention.

78. Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia knew that none of them possessed the required medical expertise to give the needed medical attention.

79. Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia, as gatekeepers to Ms. Pruitt's ability to get medical attention, refused to allow her to see anyone with the medical expertise necessary to give her the medical attention she needed.

80. In so doing, Defendants Baier, Stambaugh, Maes, Smith, Lobato, Hill, Baier, and Heredia knew of and disregarded an excessive risk to Ms. Pruitt's health and safety.

81. Defendants' refusal to allow Ms. Pruitt to see a medical professional for her serious medical conditions caused Ms. Pruitt substantial harm: she was forced to go through withdrawals that caused her to go into pre-term labor and deliver her daughter alone on the concrete floor of her jail cell.

### Second Cause of Action: Deliberate Indifference
### (Labor and Delivery in Jail)
### Fourteenth Amendment; 42 U.S.C. § 1983
### Defendants Hill, Baier, and Heredia

82. Ms. Pruitt incorporates all other paragraphs as if fully detailed herein.

83. Between and including November 5 and November 6, 2016, Ms. Pruitt went into labor and gave birth while at the Alamosa County Jail.

84. Being in labor and giving birth represents a serious medical condition.

85. Defendants Hill, Baier, and Heredia knew Ms. Pruitt was pregnant, going into labor, in labor, and giving birth while in jail.

86. Defendants Hill, Baier, and Heredia knew that this represented a serious medical condition that required immediate medical attention.

87. Defendants Hill, Baier, and Heredia knew that none of them possessed the required medical expertise to give the needed medical attention.

88. Defendants Hill, Baier, and Heredia, as gatekeepers to Ms. Pruitt's ability to get medical attention, refused to allow her to see anyone with the medical expertise necessary to give her the medical attention she needed.

89. In so doing, Defendants Hill, Baier, and Heredia knew of and disregarded an excessive risk to Ms. Pruitt's health and safety.

90. This refusal to allow Ms. Pruitt to see a medical professional for her serious medical conditions caused Ms. Pruitt substantial harm: she was forced to go through labor and deliver her daughter alone on the concrete floor of her jail cell.

### Third Cause of Action: *Monell*
### Fourteenth Amendment; 42 U.S.C. § 1983
### Defendants Jackson, Alamosa County Sheriff's Office

91. Ms. Pruitt incorporates all other paragraphs as if fully detailed herein.

92. The actual customs, policies, and practices of Defendant Jackson and the Alamosa County Sheriff's Office concerning how and when to provide medical care for inmates in general, inmates in withdrawal, pregnant inmates, and pregnant inmates in withdrawal was a proximate cause of substantial harm to Ms. Pruitt.

93. Defendant Jackson and the Alamosa County Sheriff's Office's failure to train Alamosa Deputies concerning how and when to secure medical care for inmates in general, inmates in withdrawal, pregnant inmates, and pregnant inmates in withdrawal was a proximate cause of substantial harm to Ms. Pruitt.

94. Defendant Jackson and the Alamosa County Sheriff's Office customs, policies, and practices concerning how and when to provide medical care for inmates in general, inmates in withdrawal, pregnant inmates, and pregnant inmates in withdrawal, combined with Defendant Jackson and the Alamosa County Sheriff's Office's failure to train Alamosa Deputies concerning how and when to secure medical care for inmates in general, inmates in withdrawal, pregnant inmates, and pregnant inmates in withdrawal, represented deliberate indifference to inmates' serious medical needs and the tacit approval of unconstitutional denials of medical care.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Pruitt respectfully requests that this Court enter judgment in her favor against Defendants, and award her all relief as allowed by law, including but not limited to the following:

a) Appropriate relief at law and equity;

b) Declaratory relief, injunctive relief, and other appropriate equitable relief;

c) Compensatory and punitive damages on all claims allowed by law in an amount to be determined at trial;

d) Relief in the nature of mandamus;

e) Attorneys' fees and the costs associated with this action on all claims pursuant to 42 U.S.C. § 1988 and all applicable law;

f) Pre- and post-judgment interest at the appropriate lawful rate;

g) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: July 11, 2018

*s/ Adam Frank*
Adam Frank
Faisal Salahuddin
FRANK & SALAHUDDIN LLC
1741 High Street
Denver, CO 80218
Telephone: (303) 974-1084
Fax: (303) 974-1085
fas@fas-law.com
adam@fas-law.com
*Attorneys for Plaintiffs*