IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-01765-RM-KMT

IRENE PRUITT,

    Plaintiff,

v.

ALAMOSA COUNTY SHERIFF'S OFFICE,
ROBERT JACKSON, Alamosa County Sheriff, in his individual capacity,
JOSHUA HILL, Alamosa County Deputy Sheriff, in his individual capacity,
JOSHUA BAIER, Alamosa County Deputy Sheriff, in his individual capacity,
BRANDON HEREDIA, Alamosa County Deputy Sheriff, in his individual capacity,
PAUL GILLELAND, Alamosa County Deputy Sheriff, in his individual capacity,
MARTIN MAEZ, Alamosa County Deputy Sheriff, in his individual capacity,
NICK SMITH, Alamosa County Deputy Sheriff, in his individual capacity, and
ANGELA LOBATO, Alamosa County Deputy Sheriff, in her individual capacity,

    Defendants.

## ORDER

This matter is before the Court on Plaintiff's Motion to Strike Defendants' Non-Retained Expert (the "Motion") (ECF No. 60). Defendants have filed a response, to which Plaintiff has filed a reply. Upon consideration of the Motion, the relevant parts of the court record, and the applicable rules and case law, and being otherwise fully advised, the Court finds and orders as follows.

### I.    BACKGROUND

The case was filed after Plaintiff went through labor and gave birth in her jail cell in November 2016 at the Alamosa County Jail. Plaintiff also alleges that while she was pregnant in

her jail cell she was forced to go through severe opiates withdrawal. This all resulted allegedly from Defendants' unconstitutional actions for which Plaintiff brings the following claims: (1) Deliberate indifference to Ms. Pruitt's serious withdrawal symptoms that occurred while she was pregnant, leading to pre-term labor and early delivery; (2) deliberate indifference to Ms. Pruitt going into labor and delivering a child; and (3) a *Monell* claim.[1]

In accordance with the requirements under Fed. R. Civ. P. 26(a)(2), Defendants disclosed two rebuttal expert witnesses, one disclosed as retained and the other disclosed as non-retained.[2] The non-retained expert is Dr. Patrick Thompson, a family medicine doctor, who is, among other things, the Medical Director for the Alamosa County Detention Center[3] and was serving in that capacity in November 2016. The Motion at issue seeks to strike the non-retained expert, Dr. Thompson, based primarily on arguments that he is, in actuality, a retained expert who failed to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B) and on Fed. R. Evid. 702.

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 26 and 37

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any expert witness it may use at trial. If an expert witness is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosure of the expert's identity must be accompanied by a written report prepared and signed by him. Fed. R. Civ. P. 26(a)(2)(B). If an expert witness is not "retained or specially employed," the disclosure of his identity need only

---
[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[2] ECF No. 60-1.
[3] Defendants call the facility a detention center while Plaintiff calls it a jail. It is nonetheless the same facility.

2

also contain "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "The purpose of expert disclosures is 'to eliminate surprise and provide opposing counsel with enough information...to prepare efficiently for deposition, any pretrial motions and trial.'" *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-CV-02848-REB-MEH, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014) (ellipsis in original) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121–22 (D. Colo. 2006)).

Where a challenge is made as to the sufficiency of the Rule 26(a)(2) disclosure, "the movant [must] show that the disclosing party failed to meet all requirements of Rule 26(a)(2)(B), and the disclosing party must then demonstrate that the expert is not retained or specially employed so that the requirements of Rule 26(a)(2)(B) do not apply." *Carbaugh*, 2014 WL 3543714, at *2. "'[T]he substance of the expert's testimony,'" rather than "'the status of the expert'" dictates whether a Rule 26(a)(2)(B) report is required. *Carbaugh*, 2014 WL 3543714, at *3 (quoting *Trejo v. Franklin*, No. 04-cv-02523-REB, 2007 WL 2221433, at *2 (D. Colo. July 30, 2007)).

Where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quotation marks and citation omitted).

## B. Fed. R. Evid. 702

Rule 702 of the Federal Rules of Evidence ("Rule 702") governs the admission of expert evidence in federal court. Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To evaluate admissibility, the court follows three steps. First, the court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (quoting Rule 702). Next, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable. *Id.* Finally, after reliability, the court evaluates whether the testimony is relevant. *See* Fed. R. Evid. 402. The trial court has discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp.*, 918 F.3d at 770 (emphasis in original). A *Daubert* hearing is not mandated. *Id.* The proponent of expert evidence bears the burden of establishing its admissibility. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

### III. DISCUSSION

#### A. Retained v. Non-Retained

The Court finds Plaintiff has met her initial burden of showing that Defendants' "non-retained" witness Dr. Thompson failed to comply with all requirements in Rule 26(a)(2)(B) as he did not prepare and sign a report as required. Defendants do not argue otherwise; instead they contend Dr. Thompson's proposed testimony falls under Rule 26(a)(2)(C) so no such report was required. Upon review, the Court agrees that, except as stated below, Defendants have sufficiently shown Dr. Thompson was properly designated as a non-retained expert.

Dr. Thompson is a family medicine doctor. He was and is the Medical Director at the jail in which Plaintiff was detained at the time period complained of. Nurse Kelly Bleakney worked with Dr. Thompson at the jail and she assisted him in establishing protocols for providing medical care at the jail and putting the protocols in place. If Ms. Bleakney had a question about anything concerning the care of an inmate, she would contact the pre-existing medical provider and/or Dr. Thompson. In this case, Ms. Bleakney stated she did not contact Dr. Thompson about Plaintiff's case because she was able to speak to Plaintiff's reported providers.

Based on Dr. Thompson's actions and facts known to him due to his role as Medical Director of and in establishing protocols for the jail, and his expertise, Defendants offer Dr. Thompson to testify as to certain matters. Of these matters, Plaintiff agrees[4] that Dr. Thompson's testimony may include "knowledge [he] obtained in the role of Medical Director of the Alamosa County Jail,"[5] "the state of medical care at the Alamosa County Jail, the policies and procedures

---

[4] Implicitly or explicitly. And, to the extent Plaintiff argues otherwise, the Court finds that such matters are within the scope of Dr. Thompson's non-retained testimony in light of his background, position, and personal involvement with the administration of matters involving the Alamosa County Jail.

[5] ECF No. 72, p. 3.

regarding medical care at the Alamosa County Jail at the time of the complaint, and any interactions he personally had regarding Ms. Pruitt's care in November 2016,"[6] and "knowledge and expertise Dr. Thompson obtained as the Medical Director of the Alamosa County Jail in the execution of his professional, non-litigation, duties."[7] Plaintiff, however, objects to the following matters.

> ***"Testimony regarding the conduct, opinions, and medical records from other parties."[8]***
>
> (a) Dr. Thompson would testify not only to the procedure of having an inmate cleared at the San Luis Valley Regional Medical Center prior to admission to the Alamosa County Jail, *but also would testify (presumably based on a review of the records of other medical providers) that this procedure was complied with for Ms. Pruitt's admission on November 4, 2016.*
>
> (b) Dr. Thompson would testify that Nurse Bleakney confirms that Ms. Pruitt's circumstances fell within the clearance procedures and protocols, and that the protocols were followed for Ms. Pruitt;
>
> (c) Dr. Thompson would testify that neither he *nor Nurse Bleakney* received notification or information from the Medical Center that Ms. Pruitt required further evaluation, medication, or other procedures for her pregnancy and/or opioid addiction/withdrawal.
>
> (d) Dr. Thompson would testify that *Nurse Bleakney concluded upon examining Ms. Pruitt that her condition did not necessitate further evaluation by Dr. Thompson and/or medical specialists in pregnancy and opioid addiction.*
>
> (e) Dr. Thompson would testify that he is not aware of any medical evidence that serious medical complications resulted to Ms. Pruitt or the baby as a result of having given birth at the Alamosa County Jail.

(ECF No. 71, pp. 4-5 (emphasis in original).) The Court examines them in turn.

---

[6] ECF No. 72, p. 3.
[7] ECF No. 72, p. 4.
[8] As denominated by Plaintiff. The Court finds the record fails to show Dr. Thompson was required to examine other parties' records rather than the records, including its procedures and protocols, of the Alamosa County Jail which Dr. Thompson oversaw. Records which Plaintiff apparently has obtained. (*See* Defendants' Response brief.) However, the Court agrees that Dr. Thompson may not base his opinion on testimony outside of such records. *See Nagle,* 2011 WL 3861435, at *4.

As to (a) and (b), the Court finds Dr. Thompson may testify as to whether Ms. Pruitt followed the protocols he instituted or put in place, e.g., whether she contacted an inmate's medical providers as required by the protocols. Such testimony would be within his knowledge and expertise as the Medical Director of the Alamosa County Jail in the execution of his professional, non-litigation, duties. To the extent Defendants seek to offer Dr. Thompson to testify beyond that, e.g., that compliance with such protocols satisfies the applicable standard of care, such testimony is not permitted.

As to (c), the Court finds Dr. Thompson may testify as to his own perceptions and interactions but may not testify as to what information Ms. Bleakney received and the appropriateness of any response. The Court recognizes there may be a gray area between testimony of compliance with the protocols and testimony of whether, in light of the information received, further action was required. The Court leaves those issues for trial.

As to (d) and (e), the Court finds Dr. Thompson may not testify as to what Ms. Bleakney concluded or what any medical evidence may be and its implications concerning Plaintiff and her baby. Such testimony does not fall within the scope of "what he saw and did and why he did it," *Nagle v. Mink,* No. 10-cv-01935-PAB-MEH, 2011 WL 3861435, at *3 (D. Colo. Aug. 29, 2011) (quotation marks and citations omitted), or within the scope of his knowledge as Medical Director.

In summary, as to some matters, Dr. Thompson will be testifying as a witness based on his personal experience with and knowledge of the protocols and its application in this case. As to those matters, Defendants were not required to provide a Rule 26(a)(2)(B) expert disclosure. As to the other matters, Dr. Thompson may not testify about such matters as stated above unless

the Court finds the nondisclosure was substantially justified or harmless. The Court addresses this issue below.

***The professional standard of care.*** Plaintiff objects to Dr. Thompson providing any testimony regarding the standard of care for providing medical treatment in county jails as beyond the scope of non-retained testimony. The Court agrees. *See Nagle*, 2011 WL 3861435, at *4.

### B. Sufficiency of Non-Retained Expert Disclosures

As stated, "[t]he purpose of expert disclosures is 'to eliminate surprise and provide opposing counsel with enough information ... to prepare efficiently for deposition, any pretrial motions and trial.'" *Carbaugh*, 2014 WL 3543714, at *2. As to those matters of which the Court finds Dr. Thompson may testify, Plaintiff was provided with sufficient details of Dr. Thompson's testimony along with the attendant records, such as the policies. Accordingly, the Court finds the disclosure is sufficient.

### C. Striking of Testimony

Plaintiff seeks to have Dr. Thompson's testimony stricken arguing Defendants fail to establish their inadequate disclosures were substantially justified or harmless. As to the testimony which the Court has determined is *not* within the scope of non-retained testimony, the Court examines the following factors to determine if this testimony should be stricken: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993.

Upon review, the Court agrees with Plaintiff that the challenged testimony should be stricken. Here, Plaintiff will be prejudiced because, for example, the disclosure fails to provide sufficient facts and other information to determine the basis for any standard of care testimony. The prejudice can only be cured by requiring supplemental disclosures and, if Plaintiff choses, additional discovery. But, discovery has long closed[9] and trial is set. Finally, the Court finds no evidence of bad faith or willfulness but that is insufficient to stave off striking the testimony.

### D. Fed. R. Evid. 702

Plaintiff raises several arguments concerning Rule 702 which the Court finds either moot (because the testimony will be stricken) or insufficient to overcome Defendants' arguments. First, as to the standard for medical treatment, this testimony will be stricken. Second, as for the "conduct" of Ms. Bleakney,[10] this testimony will be stricken.[11] Third, as to the compliance with procedures Dr. Thompson established at the Alamosa County Jail, to the extent it is allowed, the Court finds Dr. Thompson is qualified to testify as to such matters and his testimony is reliable and relevant to the issues. That Plaintiff disagrees with Dr. Thompson's view of the facts does not render his testimony impermissible. It is up to a jury to determine and resolve any factual disputes. Fourth, as a family medicine professional who is the Medical Director of the Alamosa County Jail, to the extent this testimony is allowed, Dr. Thompson is qualified to testify as to the medical expertise or experience required to medically evaluate and treat inmates who were pregnant and on opioids. And, as the person who requested a full-time nurse be employed at the

---

[9] The Court would reach the same conclusion even if a determination on the Motion had been made earlier. As Plaintiff argues, at the time of the filing, because of the inadequate disclosure Plaintiff would have been unable to meaningfully depose Dr. Thompson before the close of discovery. The Court should not have to extend deadlines to accommodate parties who fail to comply with a deadline.
[10] Listed as (a) and (b) on page 7 of the Reply. (ECF No. 71, p. 13.)
[11] Dr. Thompson can certainly testified as to his own conduct.

facility to evaluate and screen inmates on medical issues and oversaw the facility, Dr. Thompson would have knowledge to assist the jurors in assessing the medical expertise or training of the staff at the facility.[12] Finally, as to testimony on whether Plaintiff or her baby suffered any serious complications, this testimony will be stricken. Accordingly, Plaintiff's request to strike based on Fed. R. Evid. 702 is denied.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that striking all testimony requested is not warranted. Nonetheless, depending on the evidence at trial, Plaintiff is not foreclosed from raising objections as appropriate during trial.

According, it is **ORDERED** that Plaintiff's Motion to Strike Defendants' Non-Retained Expert (ECF No. 60) is GRANTED IN PART and DENIED IN PART as stated herein.

DATED this 31st day of March, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[12] Of course, Plaintiff is free to challenge the extent of Dr. Thompson's knowledge at trial. But, this goes to the weight of his testimony, not admissibility.