IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-01765-RM-KMT

IRENE PRUITT,

    Plaintiff,

v.

ALAMOSA COUNTY SHERIFF'S OFFICE,
ROBERT JACKSON, Alamosa County Sheriff, in his individual capacity,
JOSHUA HILL, Alamosa County Deputy Sheriff, in his individual capacity,
JOSHUA BAIER, Alamosa County Deputy Sheriff, in his individual capacity,
BRANDON HEREDIA, Alamosa County Deputy Sheriff, in his individual capacity,
PAUL GILLELAND, Alamosa County Deputy Sheriff, in his individual capacity,
MARTIN MAEZ, Alamosa County Deputy Sheriff, in his individual capacity,
NICK SMITH, Alamosa County Deputy Sheriff, in his individual capacity, and
ANGELA LOBATO, Alamosa County Deputy Sheriff, in her individual capacity,

    Defendants.

---

## ORDER ON
## DEFENDANT HILL'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Hill's Motion for Summary Judgment (ECF No. 78).[1] Plaintiff has filed a response and Defendant Hill has filed a reply. The motion is fully briefed and ripe for resolution. Upon consideration of the Motion, the applicable parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

**I.    BACKGROUND**

The case arises because Plaintiff went through labor and gave birth in a holding cell in November 2016 at the Alamosa County Jail ("Jail"). Plaintiff also alleges that while she was

---

[1] Which Defendant Hill corrected by Notice. (ECF No. 87.)

pregnant in her jail cell, she was forced to go through severe opiates withdrawal. This occurred due to Defendants' alleged unconstitutional actions for which Plaintiff brings the following claims: (1) deliberate indifference to Plaintiff's serious withdrawal symptoms that occurred while she was pregnant, leading to preterm labor and early delivery; (2) deliberate indifference to Plaintiff going into labor and delivering a child; and (3) a *Monell* claim.[2] Only the first and second claims are against Defendant Hill. Construing the evidence in a light most favorable to Plaintiff, this is what occurred.[3]

***Friday, November 4, 2016.***

In the early morning hours of Friday, November 4, 2016, Plaintiff was arrested for unlawful possession of a controlled substance. At the time of her arrest, Plaintiff was about eight (8) months pregnant and a daily heroin user. She believed her due date was sometime between December 2016 and January 2017.

After Plaintiff's arrest, the Alamosa Police Department officers brought her to the San Luis Valley Regional Medical Center ("Medical Center") for a medical evaluation. Plaintiff advised the Medical Center that she was pregnant and using heroin but had no complaints of problems with her pregnancy. The medical staff at the Medical Center found nothing to suggest any problems with Plaintiff's pregnancy; therefore, Plaintiff was medically cleared to be booked into the Jail and provided with "After Care Instructions." The After Care Instructions had generic instructions about what not to do during a pregnancy, e.g., stop any smoking, avoid alcohol and drugs, and keep hydrated. The After Care Instructions also stated for Plaintiff to get help right

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[3] The Court finds that on many occasions Plaintiff misstated or misrepresented the evidence. For example, Plaintiff stated that Defendant Hill interacted with Plaintiff on multiple times during his 11/4-11/5 and 11/5-11/6 shift relying on Defendant Hill's testimony regarding his interactions with her on his *11/3-11/4* shift. (ECF No. 110, ¶¶55-56.)

away if she experienced pain, cramping, vaginal bleeding, nausea/vomiting, dizziness/lightheadedness, or passing out.[4]

The Alamosa Police Department officers then brought Plaintiff to Jail where she was booked that morning, November 4, at about 2:05 a.m. During the time Plaintiff was in Jail, she interacted with various Defendants. Plaintiff recalls interacting with or seeing Defendants Hill, Maez, Lobato, and Smith. At issue here is Defendant Hill.

Defendant Hill was a deputy at the Jail and worked the graveyard shift during the relevant time in November 2016: from 5:00 p.m. until 5:00 a.m. on 11/3-11/4 (Thursday night into Friday morning), 11/4-11/5 (Friday night into Saturday morning), and 11/5-11/6 (Saturday night into Sunday morning). There is no dispute that Defendant Hill was on duty when Plaintiff was booked. The dispute lies in where Defendant Hill was on duty: was he in the Jail's control room or the booking office? Defendant Hill contends it was the former while Plaintiff contends it was the latter. The Booking Report shows no involvement by Defendant Hill; instead the deputies involved were Defendants Maez and Heredia.[5] And, Defendant Hill's contemporaneous incident report states he was working in the control room. Regardless, there is evidence that Defendant Hill was in the booking area at unknown time(s) during the early morning of 11/4.

While Defendant Hill did not book Plaintiff in, he did place her in the holding cell. During his early morning shift, he went into the cell frequently because he saw Plaintiff was crying and hitting her head on the cell's walls. At some point in time, Defendant Hill escorted Plaintiff to the restroom where she washed her face, put on a "paper suit,"[6] and got a cup of water. Defendant Hill returned to the control room, observed Plaintiff acting erratically, and

---

[4] ECF No. 81-2, p. 1.
[5] ECF No. 81; No. 79-5, p. 165.
[6] A paper suit is a form of clothing provided to inmates who have hurt themselves or are at risk for hurting themselves. (ECF No. 79-7, 52:14-25.)

instructed Defendant Heredia to start an observation log.[7] Defendant Hill also called Mental Health and put Plaintiff on a suicide watch.[8] And, at some point on November 4, someone from Behavioral Health came to see Plaintiff to talk about her mental health and to see if she was suicidal.[9]

At about noon on November 4, Defendant Lobato, another duty, took Plaintiff to see Nurse Bleakney who worked at the Jail. Plaintiff advised Nurse Bleakney that she was pregnant and using heroin. Nurse Bleakney completed an inmate medical evaluation (a plan of care) and made findings which stated Plaintiff was at risk for preterm labor due to withdrawal.[10] At some point that day, Defendant Lobato took Plaintiff to have a shower.[11] And, later that day, Nurse Bleakney stopped by Plaintiff's holding cell and checked on her.[12] What was said, and Plaintiff's state of health, is disputed. According to Plaintiff, she was going through withdrawal, told Nurse Bleakney that she did not feel well, and Nurse Bleakney said that "things will get better, that's what happens when you do drugs."[13] According to Nurse Bleakney, Plaintiff was crying at that time and she (Nurse Bleakney) would not have said that to anyone who uses drugs.[14] Regardless, Nurse Bleakney observed no signs of withdrawal while she was there that day,[15] e.g., until she left sometime about 5:00-6:00 p.m. on November 4.[16]

---

[7] No log was ever started but the Court finds that is immaterial here.
[8] No suicide watch log was ever started and the "pass-on" notes from one shift to the next contained no entry that Plaintiff was on suicide watch. Again, the Court finds that is immaterial here. As Plaintiff testified, she was not suicidal. (ECF No. 79-1, 135:6-12.)
[9] Plaintiff was apparently not responsive to the Behavioral Health worker, so he left.
[10] ECF No. 81-5; No. 81-6.
[11] ECF No. 242:18-245:12
[12] Nurse Bleakney generally worked at the Jail from 8:00 a.m. to 9:00 a.m. until 5:00 p.m. to 6:00 p.m. on Mondays, Tuesdays, Wednesdays, and Fridays. (SUMF ¶25.) She is uncertain about what time this occurred. (ECF No. 98-6, 131:14-25.)
[13] ECF No. 98-6, 114:20-115:19; No. 79-1, 202:1-7.
[14] *Id.*; Bleakney Aff., ECF No. 98-5, ¶60.
[15] ECF No. 98-6, 131:20-132:9.
[16] Plaintiff concedes as much because she states she began exhibiting signs of distress after Nurse Bleakney left the Jail. (ECF No. 98, p. 3.)

Also at some point that day, Nurse Bleakney went to the booking area and told a "group"[17, 18] of deputies that if Plaintiff said anything about going into labor or was in distress, they needed to call 911. She then relied on this "group" to relay it to the other deputies.

Defendant Hill's shift ran from 5:00 p.m. until 5:00 a.m. on November 4-5. There is no evidence of what contact, if any, Defendant Hill had with Plaintiff during his evening shift from 5:00 p.m.-11:59 p.m. on November 4. Nonetheless, Defendant Hill worked in the booking area during his shift and could hear Plaintiff crying loudly and hysterically. And, he closed the door to the booking area, but was still able to hear her.[19]

### Saturday, November 5, 2016.

There is no evidence of any interactions between Plaintiff and Defendant Hill during his early morning shift on November 5. But, as stated, Defendant Hill worked in the booking area and could hear Plaintiff crying loudly and hysterically, even with the door closed.[20]

On the evening of November 5, Plaintiff thought she was going into labor. She called out "I think I need to go to the hospital, something is wrong" or similar words on many occasions.[21] Plaintiff recalls no interactions with Defendant Hill that day.[22] Defendant Hill again worked in the booking area during his graveyard shift, recalls Plaintiff was crying loudly and hysterically,[23] which he could hear even with the door closed.[24]

---

[17] ECF No. 98-6, 16:2-10.
[18] Nurse Bleakney's Affidavit referred to the group as "jail staff." (ECF No. 98-5,¶¶51, 54.) As shown by the work schedule for November 4, who could potentially have been present depended on when she spoke with the staff. (ECF No. 98-4, copy attached.)
[19] ECF No. 110, ¶¶52-53.
[20] ECF No. 110, ¶¶52-53.
[21] ECF No. 79-1, 212:6-25.
[22] ECF No. 79-1, 204:8-14, 205:1-23, 251:23-252:1.
[23] ECF No. 79-1, 193:18-194:5.
[24] ECF No. 110, ¶53.

*Sunday, November 6, 2016.*

In the early hours of Sunday morning, around 4:00 a.m., Plaintiff gave birth to her daughter in her cell. She recalled no interactions with Defendant Hill before giving birth.[25] The only person Plaintiff recalled interacting with shortly before giving birth was Defendant Baier.[26]

Defendant Hill recalled Plaintiff was still crying loudly and hysterically. He recalled speaking with her through the open tray slot of her cell but could not recall the contents of such conversation.[27] Whatever was said prompted Defendant Hill to contact his supervisor, Defendant Baier, and have him speak with Plaintiff.[28] According to Defendant Hill, Defendant Baier spoke with Plaintiff about a minute or two and then came back to the booking office. They spoke for about 30 seconds or a minute and agreed that EMS needed to be contacted, so Defendant Hill contacted dispatch to contact EMS for Plaintiff.[29] While Defendant Hill was on the phone, Defendant Baier yelled to get the EMS there now.

After Defendant Hill spoke with dispatch that he needed to have EMS respond emergent to the Jail, he went to Plaintiff's cell to see what was going on, saw there was a baby and went to get a sterile blanket from the med room but could not find one. Meanwhile, Defendant Baier opened the cell for the female inmate (Theodora Travers) next to Plaintiff and asked for her assistance. The EMS arrived and Plaintiff and her baby were transported from the Jail to the hospital by ambulance. Defendant Hill met Plaintiff and her baby at the hospital where he stayed until he was relieved of duty. This lawsuit followed.

---

[25] ECF No. 79-1, 251:23-252:1.
[26] ECF No. 79-1, 215:19-22.
[27] ECF No. 79-3, 191:13-24.
[28] ECF No. 79-3, 191:13-24-192:2.
[29] ECF No. 79-3, 204:1-2, 204:15-20, 205:7-9.

## II.     LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). The facts, however, must be considered in the light most favorable to the nonmoving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

7

### B. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law at the time of the alleged constitutional violation. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id*. (quotation omitted). The district court may address the steps in either order. *Carabajal v. City of Cheyenne, Wy.*, 847 F3d 1203, 1208 (10th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). If the plaintiff fails to satisfy either part of her burden, the court must grant qualified immunity. *Id*.

### C. Deliberate Indifference

The test for constitutional liability of prison officials for deliberate indifference to an inmate's or pretrial detainee's serious medical needs involves both an objective and a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). A plaintiff must satisfy both components. *Rife v. Oklahoma Dept. of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). To satisfy the objective component, a medical need must be either sufficiently serious that it has been diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). For claims involving a delay in receiving medical care, the plaintiff must show that the delay resulted in substantial harm. *Id.* To satisfy the subjective component, the plaintiff must show that the prison official knew of and disregarded an excessive risk to his health or safety by failing to take reasonable measures to abate it. *Id.*; *Sealock*, 218 F.3d at 1209.

"[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (brackets omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### III. DISCUSSION

#### A. Violation of Constitutional Right: Deliberate Indifference

For purposes of the Motion, Defendant Hill does not challenge Plaintiff's ability to satisfy the objective component required to establish deliberate indifference; instead, he focuses on the subjective component. Defendant Hill contends that Plaintiff cannot show he is liable as a "gatekeeper," *Sealock*, 218 F.3d at 1211, for medical personnel capable of providing treatment to Plaintiff while she was in Jail. Plaintiff claims Defendant Hill knew the facts, and knew of and disregarded an excessive risk to Plaintiff's health and safety by failing to get her the medical assistance she needed.

##### 1. Drug Withdrawal Leading to Preterm Labor

Plaintiff alleges her serious medical need was a combination of withdrawal symptoms and pregnancy, which led to preterm labor and delivery. The issue here is what facts did Defendant Hill know. Relying on the events over Defendant Hill's November 4 to November 5 shift and November 5 to November 6 shift, Plaintiff contends Defendant Hill knew he had to get her to a doctor but did not based on three contentions. The Court examines them in turn.

First, Plaintiff contends Defendant Hill knew Plaintiff needed to go to the hospital when she started suffering symptoms consistent with both withdrawal and labor because Nurse Bleakney had told him. But that is not so. Nurse Bleakney said she told "deputies" and the only

9

two she identified she thought were present were deputies Lobato and, perhaps, Maez.[30] Nurse Bleakney also expected the deputies she did tell would tell other deputies, but there is no evidence that any deputy told Defendant Hill. Nor is the evidence of a "typical practice"[31] for the nurse to join briefings at shift changes sufficient to show that Defendant Hill had such knowledge. Instead, Nurse Bleakney affirmatively stated she did not ever communicate with Defendant Hill about Plaintiff and/or her medical care at the Jail, did not recall if Defendant Hill was present when she advised the "deputies" of her plan of care for Plaintiff, and does not know if Defendant Hill ever saw her medical evaluation.[32, 33]

Next, Plaintiff asserts Defendant Hill knew Ms. Pruitt needed to go to the hospital when she started suffering symptoms consistent with both withdrawal and labor because it is obvious. Plaintiff contends this is "common knowledge," relying on the testimony of others that when a pregnant woman is under distress, e.g., vomiting, diarrhea, and stomach pains, this is a serious condition that requires attention by a doctor because she may be going into labor. Defendant Hill responds it is uncontroverted that in November 2016 he did not know that a pregnant woman going through withdrawals was at risk for preterm labor, because he testified it was so. As for "common knowledge," Defendant Hill contends this is irrelevant because Plaintiff must prove that he – Defendant Hill – knew of the excessive risk; it is not enough that he should have known

---

[30] ECF No. 98-5, ¶¶51, 54; No. 98-6, 158:22-159:4; No. 79-6, 102:1-103:12.
[31] ECF No. 98-23, pp. 159-160.
[32] ECF No. 98-6, 102:1-103:12.
[33] As for the After Care Instructions, Defendant Hill testified he did not receive or see them. And, contrary to what Plaintiff argues, during the relevant time period, the common practice at the Jail was for the officer bringing the inmate in to tell the detention officers if there was something urgent that needed to happen regarding follow-up medical care. If the clearance officer didn't tell the detention officers there was a critical need or something that needed to happen in the next couple of hours, the detention officers would receive the discharge instructions, put it in the nurse's box, and let the nurse deal with it in the morning, i.e., Nurse Bleakney. There is no evidence the clearance officers told any of the deputies of any need for care when they brought Plaintiff to the Jail. Thus, the Court also finds there is insufficient evidence to support an inference that Defendant Hill did know about the After Care Instructions.

of the risk or should have drawn an inference from that risk. But, as Plaintiff argues, "[i]t is well established that 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 842). That, despite his testimony, a jury could infer that Defendant Hill knew of the substantial risk of serious harm because it was obvious.

The Court finds Plaintiff has provided sufficient evidence to raise an issue of material fact with respect to whether it was self-evident that she needed medical assistance due to her withdrawal symptoms while pregnant. There is ample evidence that Defendant Hill heard Plaintiff crying loudly, hysterically, and repeatedly, so loud that he closed the door to lessen the sound but could still hear her. There is evidence that other deputies saw Plaintiff had vomited and diarrhea during the 11/4-/11/5 time period; only three deputies were on duty during Defendant Hill's shift; the booking room is only about 20 feet from the holding cells where Plaintiff was held; and two other pre-trial detainees in the holding cells at the time heard Plaintiff in distress. Thus, Plaintiff has presented sufficient evidence to create a factual issue as to what Defendant Hill heard and saw and whether such facts were sufficient from which an inference could be drawn that a substantial risk of serious harm exists and whether he drew that inference.

Plaintiff's final argument also buttresses this conclusion; she asserts this Court can infer Defendant Hill's knowledge and deliberate indifference because he allegedly disregarded Alamosa County Sheriff's Office's policies and practices. Defendant Hill does not argue that he did not violate such polices or practices. Instead, he argues that even assuming he did, which he disputes, such violation is not, in and of itself, evidence of deliberate indifference. But, as Plaintiff argues, while published protocols applicable to Defendant Hill do not create constitutional rights, "such protocols certainly provide circumstantial evidence that a prison

health care gatekeeper knew of a substantial risk of serious harm." *Mata*, 427 F.3d at 757. And, here, the policies provide for procedures such as a safety check every 30 minutes and a medical assessment at least every six hours.

In summary, based on the record, the Court finds Plaintiff has presented sufficient evidence to raise an issue of material fact with respect to Defendant Hill on the subjective element of deliberate indifference to her medical needs. This includes circumstantial evidence and the inferences to be drawn from all evidence which, on this record, the Court finds does not amount to speculation or conjecture. *See Durkee v. Minor*, 841 F.3d 872, 876 (10th Cir. 2016) (Despite defendant's testimony that he did not see plaintiff, a jury could reject defendant's testimony and infer that he too saw plaintiff because "others [also present] may testify to the surrounding circumstances and what they witnessed."); *Rife*, 854 F.3d at 647-48, 652 (factfinder may consider circumstantial evidence in deciding whether subjective prong satisfied, may infer defendant recognized need for medical attention). An official cannot "'escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Mata*, 427 F.3d at 752 (quoting *Farmer*, 511 U.S. at 843 n. 8).

### 2. Labor and Delivery In Jail

Plaintiff contends a jury could easily find Defendant Hill knew Plaintiff was in labor during his November 5 to November 6 shift. To start, it is undisputed that Defendant Hill did not have the ability to distinguish symptoms of withdrawal and symptoms of labor/childbirth. Nonetheless, Plaintiff contends Defendant Hill knew she was in labor because:

- Plaintiff yelled 10, 20 times that she was going into labor;[34]

---

[34] ECF No. 89-1, 212:9-5.

- The booking area is only about 20 feet from the holding cells where Plaintiff was located;

- The two other pretrial detainees heard Plaintiff calling for help many times and were concerned about her;[35]

- Detainee Travers testified she heard deputies saying: "Don't worry, she's not going into labor. She's not due for weeks.";[36]

- The deputies on duty were Defendants Heredia, Baier, and Hill, with Defendant Heredia working in the control room and Defendants Baier and Hill working in the booking area; and

- Defendant Hill heard Plaintiff crying loudly and hysterically.

Plaintiff also asserts Defendant Hill heard her vomiting, but there is insufficient evidence – direct or circumstantial – to support this assertion. Unlike Defendant Hill's earlier graveyard shifts, there is no evidence that any deputy heard Plaintiff was vomiting during this shift.[37] And, contrary to Plaintiff's contention there is no evidence Defendant Hill interacted with Plaintiff multiple times during *this shift*.

But, although Plaintiff "assumes" Defendant Hill heard her crying or yelling that "something is wrong with my baby" and "I need to go to the hospital" because he worked that shift, this assumption is based on circumstantial evidence – that the other two inmates heard her calling for help.[38] And, clearly Defendant Hill heard Plaintiff in distress. While the totality of the evidence is sufficient to create a genuine dispute of material fact as to what Defendant Hill

---

[35] ECF Nos. 98-12, 98-10.
[36] ECF No. 98-10, ¶17.
[37] The other inmate in the holding cell, Brian Cooper, stated he heard Plaintiff vomiting toward the evening. (ECF No. 98-12, ¶10.) He does not say he heard her throwing up all night and there is no evidence that anyone else, including the other inmate, Ms. Travers, heard Plaintiff throw up. (See ECF No. 98-10, ¶¶15-21.)
[38] ECF No. 79-1, 245:20-246:1.

heard, and, therefore, whether Defendant Hill was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, i.e., Plaintiff's labor and delivery, there is insufficient evidence to create a factual issue that Defendant Hill drew that inference. Here, the evidence is that Defendant Hill was not aware that withdrawal during pregnancy placed Plaintiff at risk for preterm labor. Further, the alleged statements by the deputies that Plaintiff was not in labor and would not be due for weeks, assuming they were made by Defendants Hill and Baier as Plaintiff contends, support the finding that Defendant Hill did not draw an inference from any cries he heard that Plaintiff was going into labor. Accordingly, Plaintiff fails to show deliberate indifference as to her second cause of action.

### B. "Clearly Established" Right

As Plaintiff fails to carry her two-part burden as to her second claim based on deliberate indifference to her labor and delivery in jail, the Court need only decide if the law was clearly established as to Plaintiff's first claim. Defendant Hill argues the law was not clearly established at the time of the incident that his conduct violated the Fourteenth Amendment. In response, Plaintiff relies on the general principles announced in *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *Kikumura*, *supra*, and *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir. 2014) and, if the Court finds that insufficient, the specific facts set forth in *Ramos, Al-Turki,* and *Clifton v. Eubank*, No. 00-cv-02555-JLK, 2006 WL 3746694 (D. Colo. Dec. 18, 2006).

The burden is on Plaintiff to show the constitutional right she claims was violated was clearly established.

> To qualify as clearly established, a constitutional right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."… A case clearly establishes a right "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." … And although there need not be a case precisely on point for a right to be clearly

14

>established, "existing precedent must have placed the statutory or constitutional question beyond debate." … This high bar ensures qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." …
>
>And it is a "longstanding principle that clearly established law should not be defined at a high level of generality." … The "dispositive question is whether the violative nature of particular conduct is clearly established." … We therefore must determine whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition."

*Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (brackets in original).

To start, the Court finds Plaintiff fails to show the general principles she relies on clearly established rights because it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, – U.S. – , – , 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). Instead, the clearly established law must be "'particularized'" to the facts of the case. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. (brackets and ellipsis in original) (quoting *Anderson*, 483 U.S. at 639). Thus, the Court examines Plaintiff's specific cases.

Plaintiff's reliance on *Clifton* is misplaced because it is an unpublished district court opinion, which cannot and does not serve to show a right is clearly established. Next Plaintiff argues *Ramos* clearly establishes a prison official is liable for deliberate indifference if he prevents an inmate from receiving treatment he knows has been recommended by a medical professional. But the Court has found Plaintiff fails to show that Defendant Hill knew about the treatment that Nurse Bleakney recommended.

*Kikumura* is also insufficient. There, the Tenth Circuit ruled on a motion to dismiss, finding plaintiff's allegations sufficiently stated a claim. The *Kikumura* court's statement of the

general constitutional standards for deliberate indifference does not, by itself, establish the law was clearly established under the facts of this case.

Finally, *Al-Turki* is similarly unavailing because at issue was a *medical professional's* deliberate indifference. There the Tenth Circuit stated "[a] medical professional may not ignore an inmate's complaints of severe pain and then escape liability because later-discovered facts about the actual cause and ultimate duration of the inmate's pain, while serious enough to give rise to an Eighth Amendment claim, do not precisely correspond with the facts of previous Tenth Circuit cases." *Al-Turki*, 762 F.3d at 1194–95. Defendant Hill is not a medical professional. Instead, he was a prison deputy.

In summary, under the evidence and arguments here, Plaintiff fails to show that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted, i.e., that Defendant Hill's failure to obtain medical help for Plaintiff while she was pregnant and in withdrawals violated her Fourteenth Amendment rights.

## IV.     CONCLUSION

Based on the foregoing it is **ORDERED** that Defendant Hill's Motion for Summary Judgment (ECF No. 78) is **GRANTED**.

DATED this 14th day of July, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

Exhibit 4

| \ | NOV/DEC 2016 | | THU | FRI | SAT | SUN |
|---|---|---|---|---|---|---|
| | TRANSPORTS | HOURS | 11/3/2016 | 11/4/2016 | 11/5/2016 | 11/6/2016 |
| SGT | BRUBACHER | 8A-5P | 8A-5P | 8A-5P | OFF | OFF |
| DEPUTY | JACKSON | 8A-5P | VAC | VAC | OFF | OFF |
| DEPUTY | NAVEAU | 8A-5P | 8A-5P | 8A-5P | OFF | 5A-5P |
| DEPUTY | SMITH | 8A-5P | 8A-5P | 8A-5P | OFF | OFF |
| | ON CALL FOR TRANSPORTS ONLY | | | | Naveau | |
| | DAYS | HOURS | | | | |
| SGT | HIJAR | 9A-5P | 9A-5P | 9A-5P | OFF | OFF |
| DEPUTY | MONDRAGON | 5A-5P | 11A-3P | OFF | OFF | OFF |
| DEPUTY | ATKINS | 5A-5P | 5A-5P | 5A-5P | OFF | OFF |
| CPL | SISNEROS | 5A-3P | 5A-430P | 5A-3P | Sick | OFF |
| DEPUTY | E. MAEZ (FTO) | 5A-5P | 5A-5P | 5A-5P | 5A-5P | 5a-5p |
| DEPUTY | LOBATO | 5A-5P | 5A-530P | 5A-530P | Drill | Drill |
| DEPUTY | GLENN | 5A-5P | OFF | OFF | 5a-530p | 5A-530P |
| DEPUTY | HEREDIA | 5A-5P | | | | |
| | NEW HIRE | | | | | |
| DEPUTY | PETROSS - CONTROL | 7A-5P | 7A-5P | 7A-5P | 7A-5P | OFF |
| | ON CALL DAYS | | GLENN | | | E. MAEZ |
| | | | THU | FRI | SAT | SUN |
| | NIGHTS | HOURS | 11/3/2016 | 11/4/2016 | 11/5/2016 | 11/6/2016 |
| SGT | M. MAEZ | 5P-1A | 5P-1A | 5P-1A | OFF | OFF |
| CPL | STAMBAUGH (FTO) | 9P-7A | OFF | OFF | OFF | 9P-7A |
| DEPUTY | HALL | 5P-5A | OFF | OFF | OFF | 5P-5A |
| DEPUTY | GILLELAND | 10P-8A | 10P-8A | 3P-1A | OFF | OFF |
| DEPUTY | HEREDIA | 5P-5A | 5P-5A | 5P-5A | 5P-5A | 5P-9P |
| CPL | BAIER (FTO) | 7P-5A | SICK | 7P-5A | 7P-5A | OFF |
| RECRUIT | RODMAN | 7P-5A | | | | |
| DEPUTY | HILL (FTO) | 5P-5A | 5P-5A | 5P-5A | 5P-5A | OFF |
| RECRUIT | DECKER | 5P-5A | 8A-5P | 8A-5P | OFF | OFF |
| DEPUTY | SANCHEZ | 5P-5A | OFF | OFF | 18-2330 | 5P-630A |
| RECRUIT | MORENO-MUNOZ | | 7P-5A | 7P-5A | 7P-5A | OFF |
| | NEW HIRE | | | | | |
| | ON CALL NIGHTS | | | SANCHEZ | | HILL |
| | RECORDS TECH | 7A-4P | | | | |
| | RECORDS TECH | 12P-9P | | | | |



November 3-6, 2016 Work Schedule 001